

Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| IN RE: | CASE NO. 2:15-bk-20026 |
|---|---|
| DREAMA ANN TAYLOR, | CHAPTER 13 |
| Debtor. | JUDGE FRANK W. VOLK |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Debtor's Second Motion for Hardship Discharge (doc. 61), to which no responses or objections have been filed.

**I.**

On January 15, 2015, Ms. Taylor filed her Chapter 13 Petition, and her Chapter 13 Plan was confirmed on June 23, 2015. The plan required a pay-in of $18,000, spread out over sixty months from confirmation, which would result in an estimated distribution of thirty percent, pro rata, to unsecured creditors. Plan payments were $300 per month.

Ms. Taylor was making her regular monthly plan payments up until July 7, 2016, when she filed her first Motion for Hardship Discharge. The Chapter 13 Trustee objected, and this Court ultimately denied Ms. Taylor's first motion. The reason for the denial was that Ms. Taylor's counsel had learned of potential insurance policy proceeds that, if realized, may have made Ms. Taylor ineligible for a discharge under 11 U.S.C. § 1328(b). Ms. Taylor's counsel again filed for hardship discharge on November 1, 2016. Tragically, Ms. Taylor passed away on Monday, July 4, 2016.

The insurance policies in question during the first hardship motion will likely provide little to no recovery for the estate. One was a life insurance policy that paid Ms. Taylor's sisters as beneficiaries, one was a $10,000 intensive care daily reimbursement policy that was cancelled in 1995, and one was a policy for flood damage. The flood damage case is being prosecuted on Ms. Taylor's behalf, but the defendant in that case is Alpha Natural Resources, which is itself in bankruptcy. Should any monies be recovered, they will be distributed to creditors by the Chapter 13 Trustee, Ms. Taylor had no remaining exemptions.

## II.

**A.    Governing Standard**

To be eligible for a hardship discharge, a debtor must satisfy the requirements of 11 U.S.C. § 1328(b):

> [A]t any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—
>
> (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
>
> (2) the value, as of the effective date of the plan, of the property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and
>
> (3) modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b). A debtor must satisfy all three conditions before the Court is authorized to grant a hardship discharge. *In re Bandilli*, 231 B.R. 836, 839 (1st Cir. B.A.P. 1999); *In re White*,

126 B.R. 542, 545 (Bankr. N.D. Ill. 1991); 7 Hon. William L. Norton Jr. & William L. Norton III, *Norton Bankr. L. & Prac. 3d* § 153:4 (2016) ("The hardship discharge is available to a Chapter 13 debtor at any time after confirmation, but only if the three conditions described above are demonstrated by the debtor after notice and a hearing.") (footnotes omitted).

B.   Section 1328(b)(1)

The first condition under section 1328(b) is that, for reasons beyond the debtor's control, he or she could not complete plan payments. 11 U.S.C. § 1328(b)(1). This analysis "is necessarily fact-driven, with an emphasis properly focused on the nature and quality of the intervening event or events upon which the debtor relies." *Bandilli*, 231 B.R. at 840; *see In re Bacon*, No. 02-40665, at \*2 (Bankr. S.D. Ga. Aug. 20, 2003). Courts are split, however, on the level of severity of factual circumstances that will properly give rise to a hardship discharge. *See generally* Honorable W. Homer Drake, Jr., *et al.*, *Chapter 13 Practice & Procedure* § 21:8 (2nd ed. 2015); *In re Harrison*, No. 96-36511-T, 1999 WL 33114273, at \*1-2 (Bankr. E.D. Va. Aug. 3, 1999). *Compare White*, 126 B.R. at 545 (limiting the application to "catastrophic circumstances" like the death of the debtor), *with Bandilli*, 231 B.R. at 839-40 (refusing "to read the word catastrophic into the statute": "Congress asked only that the Court determine whether the debtor is 'justly . . . accountable' for the plan's failure. The word 'accountable' is comparatively mild to the emotionally-laden term 'catastrophic.'").

Where courts have understood section 1328(b)(1) to require less than catastrophic circumstances to justify a debtor's failure to complete payments under a Chapter 13 plan, determining the foreseeability and substantiality of the changed circumstances is generally paramount. *See Bandilli*, 231 B.R. at 840; *In re Roberts*, 279 B.R. 396 (1st Cir. B.A.P. 2000), *aff'd*,

3

279 F.3d 91 (1st Cir. 2002); *Bacon*, No. 02-40665, at *2. In *Bacon*, for example, the court held that section 1328(b)(1) was satisfied where

(1) debtor [wa]s unable to complete payments under a Chapter 13 plan due to a change in circumstances for which debtor [wa]s not accountable,

(2) . . . the change was substantial in nature,

(3) [the change] was not foreseeable at the time of the confirmation of the plan, and

(4) debtor has made every effort to overcome such circumstances but is still unable to complete his plan payments.

*Bacon*, No. 02-40665, at *2. As to the substantiality of a change in circumstance, even termination of employment, standing alone, is insufficiently substantial to justify a hardship discharge. *See In re Easley*, 240 B.R. 563, 565 (Bankr. W.D. Mo. Sept. 10, 1999) (stating that, even in Courts that do not require a finding of catastrophic circumstances, "the loss of employment alone is not enough").

Where courts have understood section 1328(b) to require catastrophic circumstances, purely economic reasons are generally outside the parameters usually amounting to "the type of catastrophic events such as death or disability which prevent a debtor, through no fault of his or her own, from completing payments pursuant to a plan of reorganization." *See In re Nelson*, 135 B.R. 304, 307 (Bankr. N.D. Ill. 1991) (noting that the debtor's loss of his truck, inability to find full time employment, and an unexpected expense of $1,118 are economic reasons and not, therefore, the types of reasons which would justify a hardship discharge); *see also In re Meek*, No. 10-02155-8-JRL, 2012 WL 1194109, at *7 (Bankr. E.D. Va. Feb. 24, 1997) ("[T]he granting of a hardship discharge is reserved for the most extreme and unusual of circumstances that prevent a debtor from completing payments under the plan, and not for purely economic reasons.").

Indeed, a debtor's death or permanent disability preventing the debtor from earning an income are the generally cited means by which section 1328(b) is satisfied by those courts that require catastrophic circumstances to justify a hardship discharge. *See e.g.*, *In re Bond*, 36 B.R. 49, 51-52 (Bankr. E.D. N.C. 1984) (death of the debtor considered grounds for hardship discharge); *cf. In re Cummins*, 266 B.R. 852, 857-58 (Bankr. N.D. Iowa 2001) (finding no grounds for hardship discharge where husband-debtor's injury kept him from work only for a time and wife-debtor's delivery of two children kept her from work); *In re Bandilli*, 218 B.R. 273, 275 (Bankr. D. R.I. 1998) (because the debtor's medical condition preexisted the case, she did not show sufficient circumstances for a hardship discharge), *aff'd*, *Bandilli*, 231 B.R. at 841.

In the instant case, Ms. Taylor has passed away. Thus, the first prong of section 1328(b) is satisfied under either approach.

C. **Section 1328(b)(2)**

The second condition for a hardship discharge under section 1328(b) is that the debtor must satisfy a variation of the "Best Interests of Creditors" test. A debtor must show that the Trustee or the Chapter 13 debtor has distributed through the plan to unsecured creditors at least as much as they would have received had the estate been liquidated under Chapter 7 on the effective date on the plan. 11 U.S.C. § 1328(b)(2); *In re Thornton*, 21 B.R. 462, 464 (Bankr. W.D. Va. 1982). Specifically, the valuation date of the property distributed through the plan must be the effective date of the plan. *In re Dark*, 87 B.R. 497, 499 (Bankr. N.D. Ohio 1988).

According to Ms. Taylor's confirmed plan, and the Chapter 13 Trustee's Plan Worksheet (doc. nos. 6 and 30, respectively), unsecured creditors would have received a zero percent distribution on their claims. Ms. Taylor paid $300 per month for over a year. Thus,

5

unsecured creditors have received at least as much as they would have in a liquidation, and the second prong of section 1328(b) is fulfilled.

### D. Section 1328(b)(3)

Finally, to receive a hardship discharge, a debtor prove that a modification of his or her Chapter 13 plan in accordance with 11 U.S.C. § 1329 is impracticable. 11 U.S.C. § 1328(b)(3). The debtor can meet this requirement by either showing that a proposed modification was not accepted by the holders of allowed secured claims, or that approval of the modification cannot be obtained for another reason. This Court notes that "[t]he Bankruptcy Code prefers modification of the plan as a solution to a debtor's problems and it should be attempted whenever it is feasible." *In re Bacon*, No. 02-40665, 2003 Bankr. LEXIS 2386, *6 (Bankr. S.D. Ga. Aug. 19, 2003) (citing *White*, 126 B.R. at 545). Courts have previously found that debtors who have little to no prospects for employment in the near future fulfill the requirements of section 1328(b)(3), as do debtors who have no source of regular income. *See, e.g., In re Mixson*, No. 11-81472-CRJ-13, 2016 Bankr. LEXIS 1674, *9 (Bankr. N.D. Ala. Apr. 14, 2016) (Where a debtor-wife had to care for two children under the age of two and had minimal employment prospects, and the debtor-husband and sole provider had been incarcerated, the debtor-wife was granted a hardship discharge) *and Bond*, 36 B.R. at 51.

In contrast, where debtors are in the "early stages" of their bankruptcy case, and they have not shown that there is no source of income to fund a modification of the plan, courts have found that they have not satisfied the third prong of section 1328. *See, e.g., Bacon*, 2003 Bankr. LEXIS 2386 at *7. Additionally, when there is room in a plan for a downward adjustment from a one hundred percent distribution to unsecured creditors, or when there is time

6

to spread a plan out from thirty-six to sixty months, modification has not been found to be impracticable. *In re Schleppi*, 103 B.R. 901, 904 (Bankr. S.D. Ohio 1989) and *In re Starski*, No. 13-10067, 2014 Bankr. LEXIS 2171, * 4 (Bankr. N.D. Cal. May 15, 2014). And, when debtors' "circumstances changed soon after confirmation but the debtor waited to request relief until it was too late to modify the plan," the third prong is not satisfied. *In re Cummins*, 266 B.R. 852, 856 (Bankr. N.D. Iowa 2001).

Again, Ms. Taylor passed away in the summer of 2016. This is a permanent change the household income, save for the potential flood insurance recovery, mentioned above. And, should any monies come in from the flood litigation, those will go to creditors through the Chapter 13 Trustee. Thus, the Court finds that the Ms. Taylor has satisfied section 1328(b)(3).

### III.

Based upon the foregoing discussion, it is, accordingly, **ORDERED** that Ms. Taylor's Motion for Hardship Discharge, be and is hereby **GRANTED**.

The Clerk shall transmit a copy of this written opinion and order to the parties and their counsel, if any, and the United States Trustee.